Síteed, J.,
delivered tbe opinion of the Court.
The prisoner and one J. H. Smith' were indicted in the Circuit Court of Knox county for the crime of robbery. They were both convicted of grand larceny, and adjudged to confinement in the Penitentiary for five years. The prisoner appealed in error. On the 8th of January, 1869, the prosecutor, James P. Johnson, a citizen of Union county, was in the city of Knoxville. About noon of that day, he started out of the city in his wagon, and had reached a bridge near Ingles’ mill when the defendant Smith came up to the wagon and asked permission to ride, which was given, and in a few moments, the prisoner Defrese, came up and also wanted to ride. The prosecutor observed that he would have to stop on top of the hill to wait for his brother, but gave his permission also to the prisoner to get into the wagon, which he did. Both of the defendants were strangers to the prosecutor, and he states in his testimony that, “from their looks,” he was afraid of them. He, however, drove on, with one sitting on either side of him, until they reached the railroad, when the defendant Smith asked him if he had a pistol, to which he replied in the negative. At this moment Smith got out of the wagon and appeared to be taking something out of his pocket. He walked in the direction of some houses near by and disappeared behind them. The prisoner remarked that *56 Smith had dropped something. The wagon was stopped, and the prisoner picked up from the ground a paper folded in the shape of “a thumb paper,” and remounting into the wagon, he opened the paper and took from it a five cent coin, which he put into his mouth, and then refolded the paper as before. About this time the party had reached the top of the hill; where the wagon was halted. Here Smith came up, and the prisoner observed to him that he had lost something, at the same time handing him the folded paper. The defendant, Smith, replied, “Oh, yes, I would not take ten dollars for that paper,” and proposed at once to bet ten dollars that there was a five cent piece in the paper. The prosecutor replied that he did not wish to bet, and that he had no money. He was then asked by Smith to show his watch. The prisoner and Smith both examined the wat^ch, then handed it back, and the prosecutor replaced it in his pocket, observing that it was worth forty dollars. The defendant, Smith, proposed to bet twenty-five dollars against the watch; but the prosecutor “had fears of them,” as he says, and was not willing to bet. An offer was then made by Smith to bet forty dollars against the watch that there was a five cent coin in the folded paper. The prisoner, Defrese, at this time, says the prosecutor, “kept winking his eye at me.” At this time Smith and the prisoner had alighted from the wagon, and were standing by it. The prosecutor was sitting in the wagon.' He states that he was afraid of the men, and unfastened his watch and handed it to the prisoner; but, to use his own words, *57 “it was to be no bet until Smith put up forty dollars in Defrese’s hands.” The defendant, Smith, then took out a pocket book, and, without showing any money, handed it to the prisoner. The defendant, Smith, then tore open the paper, exhibited a five cent coin which had been concealed in it, “snatches his own pocket book and the watch from Defrese, and walked off.” The prosecutor besought him to come back; but he replied that he had shown the prosecutor the Yankee trick, and walked on. The prisoner remained with the prosecutor a few[1] minutes, then left him, saying that “he would go and get Smith to return the watch.” It does not appear, however, that the prosecutor ever saw the prisoner again until he confronted him as his accuser. It was shown that soon' after the departure of the defendants, two persons rode up to the wagon of the prosecutor, who seemed to them frightened and afraid of them. They assured him they were his friends, and he gave them a narrative of his troubles, and they at once went in pursuit of defendants. One of these persons states that he had seen the prisoner and Smith walking along the road before they came up with the prosecutor, and on the same day they had attempted the same trick upon the witness. The defendant, Smith, had “dropped the card” in the same way, and Defrese had picked it up and taken out the coin, and wanted the witness to bet Smith that there was no coin in it. He also stated that he saw the prisoner attempting the same thing some days before. Another witness stated that he saw these two defendants, on two different occasions, two *58 weeks before, arranging some cards for a like operation. According to the witness, the process is simple. A card is split open to the center on one side, and a five cent coin inserted; the card is then folded up with another coin enclosed. The office of one of the confederates is to drop the card, as if casually, in the presence of the victim, and then to turn away, while the other picks it up, opens it, and takes out one of the coins, and then refolds it, all in full view of the victim. On the approach of the other, he claims the package, and at once offers to bet that there is a five cent coin in it. The victim, having seen the coin taken out, is easily entrapped. “’Tis a mere gambling trick,” said the witness; “there is nothing like robbery or larceny about it, more than any other gambling trick.”[1]
*59 The law does not so regard it. On the contrary, the law would hold the secret theft an innocent sport, rather than an adroit artifice concocted to evade its penalties, and so well calculated to subserve the ends of felony and fraud, when attempted on the credulous and unwary.
It is denied at the bar that the transaction is larceny, either at common law or under statutory modifications of the common law doctrine.
It was a remark of Baron Parke, that the definitions of larceny were none of them complete: 3 Greenl. Ev., 150. He objected to that of Mr. East, because he did not define the meaning of the word felonious. It is the doctrine of the common law, that the essence of the offense is that the goods be taken against the will of the owner; invito domino; Foster, 123. And for more than three score years the courts of this State have accepted as the law the opinion of Judge Haywood in the case of The State v. Long, 1 Hay., 154, that, to constitute larceny there must be a trespass in the taking. In that case, it appears that the Judges were equally divided upon the question, whether borrowing with intent to steal will support a charge of larceny. And this query was left in that case to stand for an answer: “Is a trespass in the taking an essential ingredient in the offense?” 2 Batt. Dig., 842. Judge Haywood, who was said by C. *60 J. Henderson to be the greatest criminal lawyer of bis time, answered that inquiry in a note to the case of The State v. Long, and snch has been held to be the law in this State ever since, except as it has been modified by statute. As Baron Parke regretted that Mr. East did not define the word felonious, so, perhaps, it may be matter of regret that Judge Haywood did not define what course of conduct would constitute the kind of trespass which is an essential element in larceny, and whether or not it is to be restricted to the sense of the violation of another’s possession in the common sense of those terms. The books abound in cases where the goods were parted with willingly, and there was really no trespass in the taking, in the sense in which that term is commonly used. And yet the law raises a constructive trespass in all such cases, as in the case cited by Greenleaf, 3 Green!. Ev., 160. “A felonious intent,” says he, “may be proved by evidence that the goods were obtained from the owner by stratagem, artifice or fraud.” And he calls attention to an important distinction to be observed between the crime of larceny and that of obtaining goods by false pretenses, and cites two cases in illustration, where the same fraudulent means were used by the prisoner to obtain possession of the goods in two separate cases. In the one case the owner intended to part with his property, absolutely, and to convey it to the prisoner; but in the other, he intended only to part with the temporary possession for a limited and specific purpose, retaining the ownership in himself; the latter case alone would amount to larceny, the former constituting only the offense of obtaining goods by false pretenses. Thus, *61 tbe same distinction is observed in all the old authorities. Where the possession alone, and not the right of property, is obtained by fraud or other illegal means, accompanied by the felonious intent, it is larceny: 2 East P. C., 685; Rex v. Charwood, 1 Leach, 212; 2 Russ, on Cr., 113, 127.
There are many other cases in which the owner parts willingly with the possession of his goods, in some manner of bailment; and a fraudulent conversion by the bailee is held to be larceny. The essence of the offense in that class of cases being the fraudulent purpose at the time of the bailment, the trespass is in the fraud and deception practiced upon the owner, by which the possession was acquired with felonious intent.- The owner has parted with the possession of his goods, perhaps willingly, and hence no trespass, in its narrow and restricted sense, is committed. But when it is made apparent that some stratagem or artifice has been fraudulently used to acquire the possession; that the owner did not, in fact, part with his goods willingly, to be fraudulently appropriated by the bailee, then the crime is complete. This is a wrong, a trespass, a violation of the possession. Thus it is said that the taking and carrying away are felonious where the goods are taken against the will of the owner, either in his absence or in a clandestine manner; or where possession is obtained either by force or surprise, or by any trick, device or fraudulent expedient, the owner not parting with his entire interest in his goods; and when the taker in any such case intends fraudulently to deprive the owner of his entire interest in the property against his will: Rose. Cr. Ev., *62 586. Applying these principles to this case, we can see no escape for the prisoner, even upon the principles of the common law, independent of the peculiar statute of our State. In the language of Mr. Att. Gen. Heiskell, it is at last but a return to the ancient principles of the common law. The statute makes it larceny to use any bailment or agency merely as the means of procuring possession of property, with an intent at the time to make a fraudulent appropriation thereof: Code, 4679. We think all the elements of larceny under the law ■ exist in this case. We have examined this case very carefully, indeed, hoping that there might be some door of escape for the prisoner, upon the law and the facts, as he is yet a young man, and perhaps capable of some industrial art, in which a life of honorable toil might have redeemed his good name. But thus we find the law, and thus it is our duty to declare it.
It is urged on behalf of the prisoner, that the Court erred in admitting evidence that the prisoner and Smith were seen on several occasions attempting to practice upon others the same artifice practiced upon the prosecutor. We think the proof in this kind of case was legitimate and proper. The combination between the parties, as shown in the proof, may be classed as a conspiracy to cheat and defraud whoever may be cheated, or whoever they might find an easy victim to their artifice. And it is well settled that in such cases, general evidence of a combination to defraud or attempt to defraud others in the same way, may be shown to illustrate the animus and intention of the parties in the case in judgment: Regina v. Frost, *63 9 C. & P., 129; 2 Russ, on Cr., 699; 3 Greenl. Ev., §§ 90, 92. Every circumstance, however slight, that is calculated to throw light on the supposed crime, is to be considered: State v. Swink, 2 Dev. & Bat., 9. As a general proposition of law, it is undoubtedly true that no distinct and substantive crime can be shown upon the trial, but this rule is better understood as it is given in the text booh, that the facts proven should be strictly relevant to the particular charge, and have no reference- to any conduct of the prisoner unconnected with such charge: 2 Russ on Cr., 772. Ahd then it has been held that, if it be material to show the intent with whieh the act charged was done, evidence may be given even of a distinct offense, not laid in the indictment. And a case of robbery is cited, in illustration, where the prisoner went with a mob to the house of the prosecutor, and one of the mob, with a good intention, apparently, advised him to give them something to get rid of them and prevent mischief, upon which the prosecutor gave them the money laid in the indictment, it was held that for the purpose of showing that this was not bona fide advice, but in reality a mere, mode of robbing the prosecutor, evidence was admissible of the demands of money made by the same mob at other houses, before and after the particular transaction at the prosecutor’s house, but in the course of the same day, and when any of the prisoners were present: 4 C. & P., 444. And upon an indictment for robbing the prosecutor of his coat, the robbery having been committed by the prisoner threatening to charge the prosecutor with crime, *64 Holroyd, J., received evidence of a second ineffectual attempt to obtain money the following day, by similar threats; and upon a case reserved the Judges were of opinion that the evidence was admissible to show that the prisoner was guilty of the former transaction: Russ & Ry., 375. The case of Britt v. The State was an indictment for obtaining money by false pre-tences. The prisoner pretended that he had a warrant against the prosecutor for passing counterfeit money, and, by means of threats and promises in regard thereto, extorted bank notes from the prosecutor, in the county of Roane. On the next day the prisoner again pursued the prosecutor into an adjoining county, and falsely pretended that the prosecutor had stolen his coat, and by means thereof extorted from the prosecutor certain articles of clothing. The indictment charged the prisoner with obtaining the bank notes by falsely pretending that the prosecutor had passed counterfeit money. It was held that the transaction in the adjoining county, though a distinct offense and on a different day, was admissible: 9 Hum., 31. It may be safely assumed that whatever tends to explain or elucidate the charge in question, or to demonstrate the guilty connection of the parties therein, may be given in evidence though it may be a ground of another and distinct accusation. The intention to commit the crime is the essence of the offense, and that which illustrates the intention is always proper to be proven. "We do not think that the Court erred in admitting the testimony, but, on the contrary, we hold that in such a case as this, involving as it does the previous connection of the parties and the *65 necessity of showing a fraudulent combination between them, it was eminently right and proper.
Note. — The case was reversed on another question. [Repobteb.